JOHN HUMPHRIES v. THE STATE.

No. 1934.  Decided December 14, 1898.

**1.  Bribing Witness to Disobey Subpoena—Accomplice Testimony—Charge.**

On a trial for bribing a witness to disobey a subpoena, where it was shown that defendant furnished money to the sister of the witness to give to the latter with which to leave the county, so that he could not be produced as a witness at defendant's trial, and the sister did so, but defendant was not present at the time the money was paid by the sister to her brother; and it was further shown that defendant did not in person, at any time or place, offer to bribe the witness to leave the county and fail to appear against him at the trial; Held, the sister was clearly an accomplice, and the court's failure to charge the law of accomplice testimony as to her evidence constituted reversible error.

**2.  Same—Evidence.**

On a trial for bribing a witness to disobey a subpoena, where, after the State had introduced the subpoena in evidence, the court withdrew its consideration from the jury for any purpose save as a part of the record in the original case; Held, this left the case without any proof of the fact that the witness had ever been served with the subpoena, and therefore there was nothing for him to disobey.

APPEAL from the District Court of McLennan.  Tried below before Hon. SAM R. SCOTT.

Appeal from a conviction for bribery of a witness; penalty, two years imprisonment in the penitentiary.

Minnie Montgomery testified: That she knew defendant; that L. D. Montgomery was her brother; that she remembered about the time her brother had a case in the County Court, but did not know the date; that she remembered her brother's case was dismissed; that she remembered her brother being a witness in a case in the County Court where John Humphries was defendant; that her brother left Waco this year (1898), but did not know whether it was last April or not; that "on the morning that my brother's case was called in the County Court, the witness Georgia Tippen, who had him arrested, did not show up, and he got the case dismissed. He came home, and I was sewing when he got there; when he came home I got up and came to town. When I got as far as Mr. Hathaway's, on Second Street, I met the deputy sheriff and he inquired for my brother; I told him I did not know where he was. I came on up to John Humphries' saloon. John was standing in the door and spoke to me, and came out on the sidewalk and asked me where I was going. Mr. Humphries stopped me there in front of his saloon on Sec-

ond Street. He stopped and asked me where my brother was. I said, 'Brother has just left my house.' He (Humphries) told me to tell him to lay low until night and catch the first out. I guess he meant the first train. I said, 'Yes, sir,' and stood there awhile, and then I started on, and he said, 'Where are you going?' And he said, 'I want to give you some money to give L. D. Montgomery to leave town on.' I said all right. That was between 9 and 10 o'clock, and he told me to come back at 4 that evening; so when the clock struck 4 I went back to the saloon. I asked John Irwin where John Humphries was, and he said he was in the back part of the saloon. He told him to come out, and John Humphries came to the door, and I said, 'Here I am,' and he said, 'I will give old man Jack Long some money to give you,' and he said, 'You give it to L. D. Montgomery, and tell him the sheriff is after him, and if they catch him they will give me hell.' He told me to go around in the wine-room, and John Humphries walked around behind the counter, and I went on in the wine-room, and Mr. Long came in and handed me four silver dollars, one twenty-five cent piece and two nickels. I carried the money on home with me. I did not see my brother any more until that night. When he came home that night I gave him the money and told him what John Humphries told me to tell him. He left town that night. * * * That four dollars and some cents was paid to me for my brother to leave town on. John told me that he wanted L. D. Montgomery to leave town to keep from appearing against him as a witness."

L. D. Montgomery testified: "I remember a case against me last fall or spring in the County Court. It was for aggravated assault. I remember some cases in the County Court against John Humphries. I was a witness in John Humphries' cases; was a witness in No. 11076, for keeping open on Sunday. I was in the County Court when John Humphries' cases were called, but I was there on a case of my own, not John Humphries'. My case was dismissed. I do not know exactly that John Humphries' case was set for the same day. I left Waco on October 19th and was gone until March. One reason I left was the fine; the next reason was, I had been asked if I would leave. I had been asked by John Humphries on the morning of the trial if I would leave. We were down stairs in the hallway of the courthouse. I told him that I had not been summoned in his case for that day and I would leave. I agreed to leave. Nothing was said to me about money at all by him. I got money to leave on from my sister; that was on the night of October 19th. I got four dollars and a little over. * * * I left the County Court as soon as my case was dismissed, about 12 o'clock. I left before the case of Mr. Humphries, that I was a witness in, was called. I heard the court had fined me after I left court and was going home. Up to that time Mr. Humphries had not offered me any money to leave town on. I left town after I learned I had been fined $50. That fine was pending against me when I left; that is one reason I left—the main reason. I was going to leave whether I got that money or not. I would have been there at John's trial if he had not asked me to leave, if I had

been summoned. I had an agreement with Mr. Humphries before the trial for me to leave, but it was not made with him personally. I left by reason of that agreement. The agreement was that he was to pay that $57.95, and I was to leave town and stay until his case was dismissed. I made that agreement with my sister at home. She told me what it was. She said that he said he would. I got $4 of that fifty. The only talk that I had with Mr. John Humphries about paying me any money was through a letter that he wrote me. There was no agreement made between me and Mr. John Humphries before I left that he was to pay my fine. I did not see him after I was fined. Before I left I had no agreement with him that he was to pay my fine, or that I was to be paid for leaving."

The court charged the law as to accomplice as to L. D. Montgomery, but failed to so charge in reference to the State's witness, Minnie Montgomery.

The State introduced in evidence the record and papers of said cause No. 11076 in the County Court of McLennan County, the State against John Humphries, which shows that the said case originated in the Justice Court and went into the County Court on appeal, and was docketed in said latter court as case No. 11076, and which record shows by the officer's return that a subpoena was issued for the witness Montgomery and served, requiring his appearance in the Justice Court, and also that a subpoena had been in said case duly issued by the clerk of the County Court and served, as shown by the officer's return on the witness L. D. Montgomery.

The court charged the jury as follows: The papers in cause No. 11076 have been offered in evidence before you for no other purpose than to show that there was such a cause pending in the County Court at the time charged, and for no other purpose whatever, and you will consider the same for no other purpose whatever.

*Taylor & Williams, T. A. Blair,* and *Dyer & Dyer,* for appellant.—The witness Minnie Montgomery was clearly an accomplice or particeps criminis in the alleged offense upon which defendant was convicted, agreeably to the following authorities, viz: Code Crim. Proc., art. 741; Irvin v. State, 1 Texas Crim. App., 302; Kelly v. State, 1 Texas Crim. App., 629; Freeman v. State, 11 Texas Crim. App., 95; Philips v. State, 17 Texas Crim. App., 175; Walker v. State,, 37 S. W. Rep., 423; Bell v. State, 7 Jour. App., 421; see Willson's Crim. Stats., sec. 2450, for other cases collated on the subject.

The evidence having inculpated the State's witness Minnie Montgomery by her own testimony, as well as that of her brother, as an accomplice, the duty was devolved upon the court to charge the law of accomplice as respected her testimony, whether requested or not. Kelly v. State, 1 Texas Crim. App., 637; Hines v. State, 27 Texas Crim. App., 125; Sitterlee v. State, 13 Texas Crim. App., 587; Winn v. State, 15 Texas Crim. App., 169; Anderson v. State, 20 Texas Crim. App., 315;

Walker v. State, 37 S. W. Rep., 423, collating cases on the subject; Bell v. State, 7 Jour. App., 421.

The court erred in refusing to charge the doctrine of circumstantial evidence, in view of the fact that Minnie Montgomery and L. D. Montgomery were accomplices, the court charging the jury that the latter was such, and the evidence showing each of said witnesses to be accomplices, which left the case of defendant dependent on circumstances, if in fact there was any evidence. Ward v. State, 10 Texas Crim. App., 297; Willson's Crim. Proc., sec. 2342.

*Mann Trice,* Assistant Attorney-General, for the State.

DAVIDSON, JUDGE.—Appellant was convicted of the crime of bribery, and his punishment assessed at confinement in the penitentiary for two years, and from said judgment prosecutes this appeal. The charge is that the bribery was for the purpose of disobeying a subpoena.

The first error assigned is the failure of the court to apply the law in regard to accomplice testimony to the evidence of Minnie Montgomery, a witness for the State. This matter was also made the first ground of the motion for new trial. The statement of facts discloses that appellant stood charged in the County Court with a violation of the Sunday law. The record in that cause showed that a subpoena had been served upon L. D. Montgomery as a witness in behalf of the State. It was also shown that Montgomery had pending against him a case of aggravated assault in the same court. On the morning of the 19th of November, 1897, Montgomery's case was called, and the prosecution dismissed. Appellant requested Montgomery to leave, and he did leave the courthouse, and went about the town of Waco. Appellant's case was called on the same morning, and the trial commenced. During the progress of the trial it was discovered that Montgomery was not present. Appellant then consented to a withdrawal of the case from the jury, and its continuance to the next term of court. A fine of $50 was entered against the witness Montgomery. At the subsequent term the case was again continued on account of Montgomery's absence; and at the March term, 1898, of said court, the case was dismissed on account of his continued absence. After appellant's case was withdrawn from the jury and continued, the witness Minnie Montgomery (sister of L. D. Montgomery) was passing along the street in Waco, near appellant's place of business, when appellant hailed and had a conversation with her in regard to her brother, L. D. Montgomery. During said conversation appellant made an appointment with said Minnie at his place of business at 4 o'clock that evening for the purpose of giving her money to bear the expense of her brother, L. D. Montgomery, in leaving McLennan County. The appointment was kept by the parties, and appellant, through John Long, gave her four dollars and thirty or thirty-five cents for her brother; that she returned home, and that night gave the money to her brother, and stated to him the request of appellant that he should

leave on the first train. The witness L. D. Montgomery left, and was gone until subsequent to the dismissal of appellant's case in the County Court. It is placed beyond cavil that the conversations between Minnie Montgomery and defendant with regard to her brother, and the money conveyed by her to the brother, were for the purpose of his leaving McLennan County to avoid appearing against appellant as a witness. This she thoroughly understood, and to prove these facts she was used by the State as a witness. The court failed to charge the jury the law in regard to accomplice testimony as applied to her evidence. There can be no question that under the state of case shown by the record she was an accomplice. When used as a witness, and under an indictment charging her as a principal in this transaction, this testimony, if true, would have sustained a conviction against her. In this connection it may also be stated that the whole record makes the fact evident that appellant in person did not at any time or place offer the witness L. D. Montgomery any consideration as an inducement for him to leave McLennan County, or fail to appear as a witness against him. It is true that defendant requested him to leave at the courthouse, but Montgomery says that at that time he did not say anything about money or any other consideration for his leaving. So, the only way by which the witness was bribed, if bribed, was through his sister Minnie Montgomery, and subsequent to his leaving the courthouse. This is the State's case. Appellant was not even present at the time of the conversation between Minnie and her brother, or when the money was paid by her to her brother. There was no meeting between appellant and L. D. Montgomery from the time he disappeared from the courthouse in the morning of November 1, 1897, until subsequent to March, 1898. Because the court failed to charge the law in regard to accomplice testimony as applied to the evidence of Minnie Montgomery, this judgment must be reversed.

There is also another reversible error apparent from the record. The indictment charges that the bribe was given in order to secure a disobedience of the subpoena served upon L. D. Montgomery. The witness L. D. Montgomery testified that he had never been subpoenaed to appear before the County Court in said case; and the State offered no proof upon this question, save the introduction of the subpoena itself. Without going into the probative force of this subpoena and the return thereon, suffice it to say that after its introduction the court withdrew it from the consideration of the jury, save that with other records in the case, to show that such a case was pending; and instructed them that they could consider it for no other purpose. Then we have the case without any proof as to the fact that the party was summoned as a witness, and a direct contradiction of that fact by the witness himself. It seems that this left the case without any proof of the fact that a subpoena had ever been served upon the witness, and therefore there was nothing for him to disobey. The officer who made the alleged return upon the subpoena was not introduced as a witness; and in fact, as the case stands, there was no evidence introduced to show that the subpoena

had ever been served upon the witness. It may be questioned, even if the subpoena with the return thereon had remained before the jury, whether this would have been evidence of the fact that the witness had been summoned.

We would suggest, in view of another trial, that it may be advisable to put two counts in the indictment, one charging appellant as a principal, and the other as an accomplice. Inasmuch as the judgment must be reversed upon the other two grounds, we deem it unnecessary to enter into a discussion of this phase of the case. The judgment is reversed, and the cause remanded.

*Reversed and remanded.*