### George Ellington v. The State.

#### No. 2947. Decided April 26, 1905.

**1.—Mingling Noxious Potion—Evidence—Bill of Exceptions.**

Where the prosecutrix testified against her husband on a charge against him for an attempt to poison her that sometime before they separated he placed $150, which she had received from her guardian, between the beds and two pistols, and that one morning she went to the cow pen, leaving the defendant in the house and upon her return the money was missing, the two pistols not being disturbed, and that she never recovered the money; an objection to this testimony that it was immaterial and irrelevant, without showing enough of the surrounding facts under which it was admitted, was insufficient to exclude it, as it was not obviously immaterial.

**2.—Same—Charge of Court—Limiting Testimony.**

The taking by the husband of money, the separate property of the wife, would not be a crime, and it was therefore not necessary for the court to limit testimony given by her against him on his trial for attempting to poison her, to the effect that she had missed such money, etc.

**3.—Same—Evidence—Bill of Exceptions Must State Surrounding Facts.**

Testimony by the prosecutrix, against her husband for attempting to poison her, that sometime before she was seized with convulsions, the defendant requested her to make a will and therein to will her property to him, to which objection was made that it was immaterial and likely to prejudice the jury against defendant, can not be held on appeal as inadmissible, where the bill fails

to give the surrounding facts under which it was introduced upon trial; such testimony not appearing to be obviously inadmissible.

### 4.—Same—Evidence—Impeaching Defendant.

Where the defendant claimed that the noxious potion alleged to have been given by him to his wife was not strychnine, but some other medicine furnished him by a physician to cause an abortion on his wife, it was legitimate for the State to show that such defense was fabricated, by cross-examining the defendant while on the stand, why it was that he applied for a continuance to secure the testimony of a certain physician whom he claimed had furnished this medicine, when he had testified that another physician had furnished it; and it was immaterial whether such application was in writing and sworn to by defendant, or made verbally by his counsel.

### 5.—Same—Charge of Court—Confessions—Corpus Delicti.

Where there was abundant evidence outside of defendant's alleged confessions, both as to the corpus delicti and his connection therewith, there was no necessity that the court should have instructed the jury that they could not convict on confessions alone.

### 6.—Same—Charge of Court—Weight of Evidence.

Where the court directly instructed the jury in the first instance, if they believed the defendant mingled or caused to be mingled a noxious potion with water, with the specific intent to injure or kill E., and then told the jury, if the noxious potion so mingled with water was strychnine, and that after so mingling said strychnine with water defendant did then and there, with intent to injure and kill, cause said E. to drink said water with which said noxious potion or substance had been mingled, then to find defendant guilty, etc., the charge was not on the weight of the evidence.

### 7.—Same—Harmless Error.

See charge in opinion which was given to limit impeaching testimony, which was not on the weight of the evidence, but rather too favorable to appellant.

Appeal from the District Court of Shelby. Tried below before Hon. H. B. Short, special judge.

Appeal from a conviction of an attempt of defendant to poison his wife by mingling a noxious potion and causing her to drink same; penalty, ten years imprisonment in the penitentiary.

Mrs. Eva Ellington testified that she was married to the defendant on the 21st of July, 1901, and lived with him until December 9th of that year. She was pregnant by the defendant when they were married. He treated her kindly only for a few weeks after marriage. In August he asked her to make a will in his favor. She owned some land and defendant knew it. She refused to make the will. The defendant's conduct then became harsh and cruel towards her. On the evening of August 31, 1901, witness' step-grandmother, with whom they were living, left to go to a neighbor, to sit up for the night with a sick child, and witness and defendant were alone in the house. She went to the cow pen and returning found defendant sitting on the gallery. She then prepared to go to bed to retire for the night, when defendant asked if she would have a drink of water and she said she would. Defendant got the water out of a bucket and brought it in a dipper to her bed and she drank it. He had never before just as she was retiring asked her to have a drink of water. She was salivated from the effects of calomel at the time, and did not discover anything in the water. Some twenty-five or thirty minutes after drinking the water she had a convulsion; she

had severe pains in her head, neck and upper portions of the stomach. Her limbs would jerk; and she had a number of such convulsions. It was about 8 o'clock at night and they lasted until about 2 o'clock in the morning—she begged defendant to call her step-grandmother and to go for the doctor or the neighbors, but he refused to do so and went into another room saying no one could sleep on the bed with her, etc., and remained there until about the time she became quiet and went to sleep. On awakening the next morning the defendant dressed and went to the horse lot and her step-grandmother made the breakfast. Witness arose and went to the water bucket and took a drink of water out of it; shortly after defendant came and emptied the bucket and drew fresh water from the well and poured it into the bucket. Witness soon became violently ill and was affected just as she had been during the night before, only the pains and convulsions were more severe, and a doctor was called in, but it seemed that he gave her nothing as the trouble was about over when he came. Some weeks she saw, what she took to be a bottle of strychnine in defendant's pants' pocket. Defendant left her on the 9th day of December 1901, and her baby was born January 17, 1902. On the night before he left, witness and defendant were alone at home and discussing the subject of dying, when he said: "You needn't be uneasy, you are not going to die, any person who can take as much strychnine as I gave you the night you were so sick need have no fear ever dying." She also testified as to the money her guardian gave her as stated in the opinion. She also testified that she had not taken the calomel or any other medicine to produce an abortion.

The physician, who was called to attend prosecutrix when she had convulsions, testified that when he arrived the step-grandmother told him aside she feared defendant had given his wife strychnine, and that the symptoms he observed and the patient, in connection with this statement, led him to believe that she was suffering from strychnine poisoning. The step-grandmother corroborated the testimony of the prosecutrix as to the second convulsions, and seeing the bottle with strychnine; and that she was familiar with the symptoms of strychnine poisoning and that the prosecutrix was suffering with such symptoms, etc.

The defendant took the stand and denied his wife's testimony as to giving her strychnine or saying that he did, but that she had taken upon her own volition medicine to produce an abortion, and it was this that made her ill. He also introduced expert medical testimony that the symptoms testified to by the prosecutrix were not usually produced by strychnine, etc. He also denied that his wife asked him to call in a physician when she was ill, but insisted that the medicine was doing its work, etc. He denied having strychnine in the bottle which the State witness saw. This is a substantial statement of the evidence, leaving out details.

*Wheeler & Sanders* and *W. J. Davis,* for appellant.

*Howard Martin,* Assistant Attorney-General, for the State.

HENDERSON, JUDGE.—Appellant was convicted of an attempt to poison his wife by mixing a noxious potion and causing her to drink some, and his punishment assessed at confinement in the penitentiary for a term of ten years; hence this appeal.

Appellant reserved a bill of exceptions to the following action of the court: "While Mrs. Eva Ellington (prosecutrix) was on the stand, testifying for the State, she swore that she had received $150 from her guardian, and that defendant placed this money between the beds and between two pistols, and that one morning she went to the cow pen to milk, leaving defendant in the house, and that when she returned, on investigation, she discovered that her money was missing; the two pistols not having been disturbed. This was some time before she and her husband separated; that she never recovered the $150." This testimony was objected to by appellant on the ground that it was wholly immaterial, irrelevant and likely to inflame the minds of the jury and prejudice them against him: he not being on trial for the theft of said money, the same could not be given as evidence against him. It has frequently been held that an exception to the testimony on the ground that the same was immaterial and irrelevant, stated no ground of objection, unless the same was obviously inadmissible. Hamblin v. State, 41 Texas Crim. Rep., 135; McGlasson v. State, 38 Texas Crim. Rep., 351; Cline v. State, 34 Texas Crim. Rep., 347; Buchanan v. State, 24 Texas Crim. App., 195. However, we note that appellant further objected on the ground that he was not on trial for theft of said money, and that the same could not be given as evidence against him. Now, a bill of exceptions to the action of the court admitting testimony, should always show enough of the surroundings or environments to indicate that the court was in error in admitting the evidence. If this bill had shown, in its statement of the facts, that the transaction with reference to the taking of the $150 was isolated and had no connection whatever with the alleged attempt to poison, then this would have been a sufficient showing. As presented, the bill shows that sometime before prosecutrix and her husband separated (what time is not stated) he may have taken $150 which she claimed as her separate property. This testimony in connection with the other evidence may have been relevant as having some bearing on the accusation charged against appellant. So far as we are advised from the bill itself, the attempt to poison may have been brought about on account of this money matter. Again, the taking of the money by the husband was not, under the circumstances, a crime, as under the law he has control of the separate property of the wife. Not being a crime it is not necessary, under the facts, for the court to limit this matter in the charge.

The next bill shows that while Mrs. Ellington was on the stand as

a witness for the State, she stated that sometime before she was seized with convulsions, and after her marriage to defendant, the defendant requested her to make a will, and therein to will her property to him. To this request, she stated, she declined to accede. This testimony was objected to by defendant on the ground that it was wholly immaterial and likely to prejudice the jury against appellant. The court overruled the objections and admitted the testimony. We make the same observation with reference to this bill of exceptions as stated to the former bill; that is, the bill does not state the surrounding facts in connection with the admitted testimony, in order that the error of the court in admitting the same can be determined. The ground of objection stated, that the same was immaterial, is not a sufficient statement; the testimony not appearing to be obviously immaterial. The further statement that it was likely to prejudice the minds of the jury against him is no ground of objection, unless it be shown that said testimony was illegal and should not have been admitted. All testimony, legitimately introduced against an appellant, is offered for the purpose of injuriously affecting him before the jury. So far as we are advised by this bill, the attempt by appellant to poison prosecutrix, may have been caused or proceeded from her refusal to make a will of her property in his favor. At least, we can conceive how this may have operated as some motive in the premises. We believe it was competent to show in this connection that Mrs. Ellington owned separate property.

Appellant reserved a bill of exceptions to the action of the court permitting the State in cross-examination of appellant, in asking the following question: "If Dr. Ralph Caldwell furnished you the medicine for your wife, which you say created the symptoms mentioned by her, then why is it at a former term of this court you wanted to continue this cause to secure the testimony of Dr. H. M. Reeves, by whom you said you expected to show that he, Dr. Reeves, furnished you this medicine?" In response to this question, defendant answered, that at the time he got the medicine from Dr. Caldwell, he (said Dr. Caldwell) and Dr. Reeves were practicing together at Halbert, and that Dr. Reeves was an old and experienced practitioner, and that he supposed Dr. Reeves had in fact prepared the medicine and delivered it to Dr. Caldwell, who had delivered it to him. This testimony was objected to on the ground that it was an examination with reference to a former application for continuance of this cause, when said application was only a verbal one, made by Judge Polley (who is now deceased) and who was then counsel for defendant; and that said motion was not in conformity with the law, neither signed nor sworn to by this defendant, but only the verbal statement of his attorney, for which this defendant could not be bound; and that said testimony was immaterial. This objection was overruled and the testimony admitted. It will be noted that no objection was urged here to the effect that Judge Polley was not authorized by appellant to make the statement attributed to him, as a ground for the continuance. Indeed the answer of the witness to

the question shows that Judge Polley was acting for appellant as his counsel, and was evidently acting from information furnished him by appellant. We hold that it was competent for the State to introduce this testimony as tending to show that appellant's defense that the noxious potion alleged to have been given by him to his wife was not strychnine, but some other medicine furnished him by the doctor to cause an abortion on his wife, was fabricated and untrue.

It was not necessary for the court to have instructed the jury with reference to confessions, that they were not authorized to convict appellant on confessions alone. This was not that character of case. There was abundant testimony outside of alleged confession, both as to the corpus delicti, and appellant's conection therewith.

Some criticism is indulged by appellant in motion for new trial with reference to the court's charge defining noxious potion. We believe this is in accordance with the statute. We understand appellant's counsel in his argument to have abandoned this assignment.

We do not believe that the charge of the court submitting the issue as to the mixing and administration of said noxious potion to prosecutrix, was upon the weight of the evidence. The court directly instructed the jury, in the first instance, if they believed defendant mingled or caused to be mingled a noxious potion with water, with the specific intent to injure or kill Eva Ellington, and then told the jury, if the noxious potion so mingled with water was strychnine, and that after so mingling said strychnine with water defendant did then and there, with intent to injure and kill, cause said Eva Ellington to drink said water, with which said noxious potion or substance had been mingled, then to find appellant guilty, etc. This could not be considered an assumption on the part of the court that appellant had mingled said strychnine with water. This issue was submitted in the first instance by the court to the jury to be found as a fact, and then proceeds to tell them, if they believed as a fact appellant administered said noxious potion to his wife, with intent to injure or kill her, to find him guilty. We regard the objections to this charge as hypercritical.

The following charge is seriously objected to by appellant to wit: "Certain testimony has been introduced before you to the effect, if true, that the defendant is or has been charged with other offenses than the offense charged by the indictment in this case. And in this connection you are instructed, that you cannot consider this testimony as evidence even tending to establish any of the allegations of the indictment, but should you believe this evidence to be true, you may only consider it in determining the weight of the testimony of the defendant as a witness or his credibility, if you think it entitled to any consideration whatever." The only possible criticism that can be urged to this charge is, to the last sentence to wit: "If you think it entitled to any consideration whatever." If this sentence could be interpreted as referring to defendant as a witness or to his testimony, then it would be obnoxious as a charge on the weight of the evidence. However, we think a proper

reading of this sentence, in connection with what precedes it, refers to the alleged impeaching testimony. For instance the court instructs the jury, if they considered this impeaching evidence to be true, they could only consider it in determining the weight of the testimony of the defendant as a witness or his credibility, "if you think it worthy of any consideration whatever." That is, it was tantamount to telling the jury, if they believed the impeaching testimony was worthy of any consideration whatever. If this charge is subject to criticism at all, it is because it is rather too favorable to appellant.

We have examined the record carefully, and in our opinion the evidence supports the verdict. The judgment is affirmed.

*Affirmed.*