## W. T. AVEN v. THE STATE.

### No. 6852.   Decided January 10, 1923.

### Rehearing Granted June 27, 1923.

**1.—Murder—Confession—Corpus Delicti.**

To sustain a conviction for murder the proof must show the death of deceased by violence, and that the accused was the guilty agent. This cannot be shown by the confession alone, but the law does not require that it come wholly from evidence independent of the confession. Following Kudgadt v. State, 38 Texas Crim. Rep., 681. Qualifying Attaway v. State, 35 Texas Crim. Rep., 403.

**2.—Same—Rule Stated—Confession—Corpus Delicti.**

It is not to be understood that the rule mentioned dispenses with the evidence of the death by violence independent of the confession, but that it does not demand that such independent evidence be itself conclusive, but that it may be supplemented or aided by the confession, and made conclusive if accepted by the jury under a proper charge as proof of guilt beyond a reasonable doubt, and there was no error in refusing a requested charge warning the jury against a conviction on the confession of defendant.

**3.—Same—Newly Discovered Evidence.**

Where defendant sought a new trial by way of newly discovered evidence, and did not controvert the truth of the confession or the averment of the confession or any arsenic poison in the form of powder. and the newly discovered evidence showed that the poison was in liquid form and was not arsenic, but defendant did not controvert the truth of the averment of the confession or any testimony given upon the trial, and that besides the alleged new facts must have been known to him at the time of the trial, there was no error in overruling the motion.

**4.—Same—Defendant as a Witness—Practice in Trial Court.**

Where the defendant during the trial offered to go on the witness stand for the limited purpose of impeaching the confession, or rather its voluntary character, and the court below declined to agree to limit his cross-examination to that purpose, there is no reversible error.

**5.—Same—Rehearing—Severance—Practice on Appeal—Same Offense.**

Where appellant in his motion for a rehearing calls this court's attention to a point not discussed in the original opinion growing out of the action of the court below, upon his motion for severance, and it now appears to this court from the record that the act charged against the co-defendant for complicity in the death of the Aven child, was under the facts stated in the motion for severance, the same offense under the law as the one charging her with complicity in the killing of appellant's wife, and the same offense which appellant was then being called to defend against, the overruling of the motion for a severance is reversible error.

Appeal from the District Court of McLennan. Tried below before the Honorable Richard I. Munroe.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*J. W. Taylor* for appellant.—On question of severance, Terry v. State, 76 S. W. Rep., 928.

*R. G. Storey,* Assistant Attorney General, for the State.

MORROW, Presiding Judge.—The conviction is for murder; punishment fixed at death.

Appellant's written confession was introduced in evidence in which he stated, in substance, that he and his wife had not lived happily for some four or five years; that she was jealous and accused him of infidelity; that on several occasions, at her instance, he had moved; that he had threatened to leave but refrained from doing so on account of his affection for the children; that on July 3rd, the appellant, the deceased and her mother went to Waco. While there his wife ate a hamburger; that she had been having trouble with her stomach for several days after eating the hamburger and her stomach began to cramp; that on returning to their home, she lay down and went to sleep; that appellant went to the Keyes house and when he returned, she complained of his going there, and asked for some medicine. There being none of the kind she wanted, she asked for a dose of salts. Quoting him, he said:

"I went and fixed up the dose of salts and put some poison in the dose of salts. I put a teaspoonful of poison in the dose of salts. This poison was a white powder. I bought it in Hillsboro about a month before I gave it to her. I bought it to kill her and when I bought it I told the drug store man I wanted something to poison some varmints and some dogs. When I brought the poison home, I put it in a book desk I had there. When I gave her the poison I gave it to kill her. This was about four o'clock on Sunday afternoon."

He said that she vomited, and that he felt better, believing that she probably had expelled the poison from her stomach. Later, however, he went to the doctor and got some medicine, and further on in the night, he went after the doctor and he came to the home. Appellant said that he had told Mrs. Dessie Keyes that he had given her poison; that he and Mrs. Keyes had previously talked of poisoning his wife; that this occurred about the time he fixed the poison; that Dessie Keyes said that if his wife died, she would keep house for him; that he killed his wife for the love of his children; that he had had improper relations with Dessie Keyes for a long time.

No evidence was introduced by the appellant except the testimony of the county attorney touching the circumstances under which the confession was obtained. His testimony, in substance, revealed that he was notified by the sheriff of appellant's intention to make a statement; that on his arrival at the office of the county attorney, appellant said that before making a statement, he desired to talk to Mrs. Keyes. This privilege was given to the appellant, and on his enter-

ing the cell occupied by Mrs. Keyes and finding her in tears, he (appellant) said to her: "Turn around here, I want to talk to you, and stop crying." "I understand you have made this man a statement." She said, "Yes;" he said: "Well, I am going to make a statement and I am going to tell the truth and take all of this off of you I can," and said: "I want to know if you will come to see me when you get out of jail?" She said, "Yes." He said: "Will you tell me goodbye?" They shook hands. The party went back to the office of the county attorney, where the statement was written and signed. The county attorney wrote it, stating that he tried to use the appellant's own language; that he (appellant) made two statements at the same time, one being about a different matter, as we understand the testimony. The transaction lasted until about three o'clock in the afternoon. The statement produced is just as near the language of the appellant as possible. "Appellant talked very slow and deliberate." Mr. Buchanan, the sheriff, was present all the time. The witness did not know what happened to the appellant while he was at the jail. He heard no abusive language used towards the appellant while he was present, nor did he hear of any being used towards him before the statement was made. Before making the statement, the county attorney said to him: "I have had your wife's body taken up today, and the doctor tells me there is no doubt but what it contains arsenic." "This woman has made a statement that you poisoned your wife." Her signature to the statement was shown to the appellant and one paragraph of it was read to him. He said: "I can prove that I am not guilty." He then said that he wanted to make a statement, which was made under the circumstances related above. He said: "If I make a statement and tell the truth about this matter, there will be no sympathy for me; they may break my neck." The county attorney replied: "I don't know anything about that," but told the appellant that if he wanted to make a statement, he (the county attorney) would take it down." The county attorney said that if the appellant had been put through grilling for a great many hours, he was not aware of it, but that he did know that the appellant had been questioned. He did not know that he had not been permitted to sleep and did not think such was the case; that he did not know that the appellant had been examined by the sheriff and his deputies in relays, that when one became exhausted, another took his place. Using his language, the county attorney said: "I remember I told them when I left not to use any force, and I told Aven he did not have to make any statement."

Concerning the confession, the court gave this instruction:

"A purported confession of the defendant has been introduced in evidence before you. You are instructed that the confession of a defendant may be used in evidence against him if it appears that the same was freely made, without compulsion or persuasion; and you

are further charged that unless you believe from the evidence that said alleged confession of the defendant which has been introduced in evidence was freely made, without compulsion or persuasion, you will not consider the same as evidence against him or as evidence in the case, or for any purpose whatever.

And you are further charged that all testimony which has been introduced before you of Frank Tirey, County Attorney, as to the statements, actions and conduct, if any, of the defendant to him while confined in the county jail or in his office, is limited for the purpose for which said testimony was admitted, and that is, to aid you, if it does do so, in determing whether the alleged confession of the defendant aforesaid was freely made by him, and without compulsion or persuasion, and you will consider said testimony for no other purpose.''

In a special charge framed by the appellant, the court instructed the jury thus:

''The State, among other things in this case, relies for a conviction upon a purported confession of the defendant showing exculpatory and inculpatory statements. Now you are instructed as part of the law of this case that the State is bound by such confession or purported confession unless the State has been unable to disprove by other evidence aliundi thereof showing that the exculpatory statements are false.''

One of appellant's exceptions to the Court's charge reads thus:

''The defendant objects and excepts to the Court's charge for its failure to charge that the confession relied upon by the State must be corroborated before the State is entitled to a conviction.''

The refusal of the court to amend the charge in response to this exception is made the subject of complaint on this appeal.

Touching the relation of an extrajudicial confession to the proof of the corpus delicti, this court, in a leading case, made these remarks:

''The general doctrine is that extrajudicial confessions, standing alone, are not sufficient proof of the corpus delicti; and some of the cases hold that the corpus delicti must be proved independently of confessions. But we do not understand such to be the better doctrine. In other words, in the establishment of the corpus delicti the confessions are not to be excluded, but are to be taken in connection with the other facts and circumstances in evidence. See note 3 to case of State v. Williams, reported in 78 Am. Dec., p. 254. And this rule is recognized in this State. See Jackson v. State, 29 Texas Crim. App. 458. Said case quotes with approval an excerpt taken from 4 American and English Encyclopedia of Law, p. 309, as follows: 'A confession is sufficient, if there be such extrinsic corroborative circumstances as will, taken in connection with the confession, produce conviction of the defendant's guilt in the minds of a jury beyond a rea-

sonable doubt.' 'Such suppletory evidence need not be conclusive in its character. When such a confession is made, and the circumstances therein related correspond in some points with those proven to have existed, this may be evidence sufficient to satisfy a jury in rendering a verdict asserting the guilt of the accused. ' "Full proof of the body of the crime, the corpus delicti, independently of the confessions, is not required by any of the cases; and in many of them slight corroborating facts were held sufficient." ' 3 Am. and Eng. Enc. of Law, p. 447. We take it that there can be no question that the prosecution is permitted to prove by circumstantial evidence the corpus delicti, and in aid thereto use confession of the appellant." (Kugadt v. State, 38 Texas Crim. Rep. 694.)

To sustain a conviction for murder, the proof must show the death of the deceased by violence and that the accused was the guilty agent. This cannot be shown by the confession alone, but the law does not require that it come wholly from evidence independent of the confession. The case of Attaway v. State, relied on by the appellant asserts a different rule, but it has been modified in that respect. Sowles v. State, 105 S. W. Rep. 178; 52 Tex. Cr. Rep. 17. White v. State, 40 Texas Crim. Rep. 366. In Sowles case, supra, Judge Davidson, speaking for the court, said:

"*The rule now, as laid down by this court in the case of Kugadt v. State, 38 Tex. Cr. R. 681, 44 S. W. 989, is that a confession may be used in making out the corpus delicti. The rule as laid down in the case of Attaway v. State, 35 Tex. Cr. R. 403, 34 S. W. 112; is that, where the corpus delicti has been shown a confession may be used to connect the defendant with the offense or with the corpus delicti. The Attaway Case, however, was qualified in the case of Kugadt and subsequent cases.*"

In the instant case, the evidence independent of the confession and corroborative of it is strong and direct. Mrs. Aven became sick about two days before her death. Appellant called on the doctor and obtained from him some medicine for her to take for a sick stomach. Later on during the night the doctor saw her and she was very sick. She and other members of the family that day had eaten some hamburgers. The others were not sick. The doctor saw her again on the following morning at the house in which she and the appellant lived and he saw her again that night. The doctor that night gave her medicine, but it did not contain arsenic. About one o'clock that night, the doctor called again, and she was in a dying condition. This was on the 5th of July. The doctor did not know the cause of her death, but her symptoms were such as would have attended arsenic poisoning. The body of Mrs. Aven was exhumed and found to contain arsenic in large quantities. An analysis of the stomach indicated that it had absorbed as much as twenty-four grains of arsenic, one grain being a poisonous dose. A teaspoonful would contain about

ninety grains. The examination by the physician tended to negative any other cause of death than that of arsenic poison. On the 3rd of July, the deceased was about her work and apparently well and strong. She was about twenty-eight years of age. Mrs. Dessie Keyes lived nearby and she and her husband moved into the house with the appellant on the day after the death of the deceased. Before the death of the deceased, Mrs. Keyes was not a frequenter of her home. Mrs. Keyes was a young woman about twenty-five years of age.

The rule announced in Kugadt's case, supra, has been reaffirmed and applied on a great many occasions. See Branch's Ann. Tex. P. C., p. 1049; Ingram v. State, 78 Texas Crim. Rep., 559, 182 S. W. Rep. 296; Harris v. State, 64 Texas Crim. Rep., 594, 144 S. W. Rep. 232 and cases cited; see also Corpus Juris, Vol. 16, Sec. 1514. It is not to be understood that the rule mentioned dispenses with the evidence of the death by violence independent of the confession, but that it does not demand that such independent evidence be in itself conclusive, but that it may be supplemented or aided by the confession and made conclusive if accepted by the jury under proper charge as proof of guilt beyond a reasonable doubt. With this conception of the law, the question of the necessity in the instant case to instruct the jury that corroboration of the confession was an essential predicate for a conviction becomes a pertinent inquiry. Appellant refers to the Dunlap case, 30 Texas Crim. App. 505. In that case, the only evidence of the corpus delicti was the fact that the accused lived in the neighborhood; had a policy of insurance on the goods in the burned building, and had asked a party "not to tell on him." The undisputed evidence is conclusive to the point that Mrs. Aven died from arsenic poison; that before her death appellant obtained from the doctor medicine to give her; and that thereafter she grew worse. The proximity of Mrs. Keyes and the haste with which she became an inmate of appellant's home after the death of his wife give color to the motive for the offense which he reveals in his confession. His conversation with her in the jail is also of a like nature. The propriety of a given instruction to the jury depends in all cases upon the facts in each case. In a case where there was no evidence corroborative of the confession, the case should be withdrawn from the jury, and in one in which, as in Dunlap's case, supra, the evidence of the corpus delicti is on very shadowy lines, a charge warning the jury against a conviction on the confession alone may have been proper. However, where, as in the instant case, corroborating facts are proved without controversy, while such a charge might be proper, the necessity for it is not apparent. It was so ruled by this court in Mathews v. State, 39 Texas Crim. Rep. 555; also in Gallegos v. State, 49 Texas Crim. Rep. 115; Willard v. State, 27 Texas Crim. App. 386, 11 Am. St. Rep. 197; Slade v. State, 29 Texas Crim. App. 381; Franks v. State, 45 S. W. Rep. 1013; Tidwell v. State, 40 Texas Crim. Rep.

38, 48 S. W. Rep. 184; Bailey v. State, 42 Texas Crim. Rep. 289; Nelson v. State, 65 S. W. Rep. 95; Murphy v. State, 43 Texas Crim. Rep. 515; Ellington v. State, 48 Texas Crim. Rep. 160.

The appellant sought a new trial by way of newly discovered evidence. By his confession, it was shown that he had administered to his wife arsenic poison in the form of powder; that he had purchased it at Hillsboro. The newly discovered evidence went to show that the only poison purchased by the appellant at Hillsboro was in the form of liquid and was not arsenic; that after investigating the various drug stores in Hillsboro, one of the druggists claimed to have sold to appellant the article mentioned, and appellant identified it when it was exhibited to him in jail. The statute requiring the granting of a new trial upon the discovery of new evidence of a material character relates to new evidence that might not have been previously discovered by diligence. See Art. 837, subdivision 6, Code of Crim. Proc., Vernon's Tex. Crim. Stat., Vol. 2, p. 777 and collation of authorities. Appellant did not controvert the truth of the averment of the confession or any testimony given upon the trial. If the article which he gave his wife was liquid instead of powder, this fact must have been known to him at the time of the trial, and therefore could not be classified as newly discovered evidence. It is set up in the motion that the appellant, at the time he made his confession, knew that it was untrue. This averment emphasized the view expressed that the evidence in question could not be regarded as newly discovered evidence.

The appellant, it seems, during the trial, offered to go on the stand for the limited purpose of impeaching the confession, that is, impeaching its voluntary character. The court declined to agree to limit his cross-examination to that purpose and because of the refusal of the court to agree to limit it, the appellant did not take the stand. We are aware of no precedent which would require the court to make such an agreement, nor are we aware of any reason which would deprive the State of the right of cross-examination upon all questions pertinent to the case on trial in the event that the appellant waived his privilege to remain silent and became a witness for any purpose.

Failing to find any error warranting a reversal, the judgment is affirmed.

*Affirmed.*

ON REHEARING.

June 27, 1923.

HAWKINS, JUDGE.—Appellant calls to our attention a point not discussed in the original opinion growing out of the action of the court upon his motion for severance. To our minds it presents a most serious question. Appellant was under indictment for the murder of his wife, Mrs. Maud Aven, by administering to her arsenic

poison. He alleged in his motion for severance that Mrs. Dessie Keyes was also under indictment charging her as an accomplice in the said murder of Mrs. Maud Aven, and also that Mrs. Keyes was charged in another indictment as accomplice to the murder of the Aven child. He asserts in his motion that the act and transaction for which Mrs. Keyes was under indictment, to-wit: the murder both of appellant's wife and child to be the same act and transaction charged against appellant: "that the Aven child was nursed by its mother Mrs. Maud Aven (deceased) before she died and after she had taken into her system arsenic and the act and transaction which produced the death of Mrs. Maud Aven is the same act which produced the death of the child and for this reason but one offense had been committed."

Appellant requested that Mrs. Keyes be tried in both the cases pending against her before appellant be put to trial asserting that her evidence was material to him, and that he did not believe there was sufficient evidence against her to result in her conviction. The bill proceeds as follows:

"That the County Attorney, Frank B. Tirey, was present when said motion was read and presented to the court and did not by affidavit, or by the introduction of evidence, controvert the truthfulness of said affidavit and motion, and the defendant, thru his counsel, informed the court that the defendant, W. T. Aven, was charged with murder of both his wife and child by separate indictments and that the defendant Dessie Keyes was also charged by two separate indictments with being an accomplice in the murder of the said Mrs. Maud Aven and the Aven child, and that it was the defendant's theory that the Aven child was poisoned as a result of having been nursed by its mother thereby getting poison thru the mother's milk and that no one poisoned the Aven baby directly and that the act of poisoning the mother is the same act that produced the death of the child. The court, after hearing said motion, and considering said affidavit, and upon consultation and motion of the County Attorney, dismissed the case against the said Dessie Keyes, being case No. 5788, charging her with being a principal and accomplice to the murder of Mrs. Maud Aven, the deceased, but refused to dismiss the case charging the said Dessie Keyes with the murder of the Aven child, without stating any reason, other than the fact that there was nothing to that part of defendant's motion. To the court's action, in overruling said motion, the defendant, in open court, then and there excepted. The defendant now tenders this his bill of exceptions Number Three, and asks that the same be examined, filed and approved as part of the record in this case which is accordingly done. This bill is approved with the following explanation. Dessie Keyes was charged as an accomplice only to the murder of Mrs. Maud Aven and also as an accomplice to the murder of her husband Leslie Keyes, and also as an accomplice to the murder of the Aven child."

The county attorney responded to the motion for severance by dismissing the prosecution against Mrs. Keyes charging that she was a party to the killing of Mrs. Aven, but in that for her alleged connection with the child's death no action was taken. The indictment against her growing out of the death of the Aven child, upon its face, would appear to be a separate offense. In his application appellant appears to have brought himself within the rule announced in Cotton v. State, 92 Tex. Cr. Rep., 594, 244 S. W. Rep., 1027 that to entitle one to a severance it must be averred that the co-defendant must be charged with the *same offense*, and not one merely growing out of the *same transaction*. The facts stated in the motion and supported by the affidavit were uncontroverted, and seem to have been treated by the learned trial judge as reciting the true facts, but were deemed by him insufficient to entitle appellant to a disposition of the charge against his co-defendant relative to the murder of the Aven child.

When an accused by proper showing brings himself within the provision of Article 727 C. C. P., relative to a severance, he is entitled thereto as a matter of right. Wiley v. State, 22 Tex. Cr. App., 408; Sanchez v. State, 70 Tex. Cr. Rep., 24, 156 S. W. Rep., 218. (For other authorities see Sec. 734, page 378, Branch's Ann. P. C.) This appellant appears to have done, if as a matter of law the death of the Aven child was the same act or offense that caused the death of Mrs. Aven, and for which appellant was to be tried. If appellant killed his wife by administering poison and Mrs. Keyes was a party thereto, and there was no intent or volition to kill the Aven child, but her death resulted from the act or volition of administering poison to the mother which passed to the child from nursing at the mother's breast, was it one offense or two? If A with intent to kill B only, shoots him with a high-powered rifle, and the same bullet passing through B also kills C, is A guilty of more than one offense? Where there is only one intent and one volition, it is in contemplation of law but one act, and there can be but one offense even though more than one person be killed. Cook v. State, 43 Tex. Crim. Rep., 182; Augustine v. State, 41 Tex. Cr. Rep., 69; Ashton v. State, 21 S. W. Rep., 48; Hevera v. State, 34 S. W. Rep., 942. The same holding is announced and many authorities reviewed in the comparatively recent case of Spannell v. State, 83 Tex. Cr. Rep., 418, 203 S. W. Rep., 357. See also Corpus Juris, Vol. 16, Sections 443 and 444. The act charged against Mrs. Keyes for complicity in the death of the Aven child was, under the facts stated in the motion for severance, the same offense under the law as the one charging her with complicity in the killing of appellant's wife, and the same offense which appellant was then being called to defend against. Upon his motion for severance he was entitled under the statute to have the charge against Mrs. Keyes relative to the death of the child either first tried or dismissed, if the prosecution elected the latter, before he could be legally put to trial.

The other questions presented in the motion for rehearing we believe to have been correctly disposed of in our original opinion, but for the error discussed the judgment of affirmance must be set aside, and the judgment of the trial court reversed and the cause remanded.

*Reversed and remanded.*