### ALLEN WHITE v. THE STATE.

#### No. 1617. Decided April 12, 1899.

**1. Murder in the First Degree—Evidence Sufficient.**

See opinion for facts stated which the court hold amply sufficient to support a verdict and judgment for murder in the first degree, imposing a life penalty in the penitentiary.

**2. Same—Corpus Delicti.**

On a trial for murder, the corpus delicti is sufficiently established by proof of the death of deceased by violence at the hands of another, with defendant's confession that he killed him, coupled with the facts and circumstances corroborative of the confession and tending to indicate that defendant and no other person committed the homicide.

**3. Same—Confessions—Circumstantial Evidence.**

The corpus delicti of crime can not be established alone by the confessions of the accused. It is perfectly competent, however, to establish it by circumstantial evidence; and when, in addition to proof of it in that manner, the prosecution also proves it by defendant's confession, it is amply established in law.

**4. Surprise at Testimony of Witness—New Trial.**

The mere fact that a witness testified to something contrary to what defendant thought he would testify, is not matter of surprise, and can not be complained of for the first time on motion for new trial.

**5. Continuance—Materiality of Testimony—New Trial.**

An application for continuance, when considered on motion for new trial in connection with the other evidence in the case, will be held properly refused where the absent testimony, even if its truth be conceded, would not be material.

**6. Circumstantial Evidence—Charge—Bill of Exceptions.**

The court on appeal will not review the failure of the court to charge upon circumstantial evidence where there has been no bill of exceptions, nor exception in the motion for new trial reserved to the failure of the court to give such charge.

**7. Same—Confession.**

A charge on circumstantial evidence is not required where the State relies upon the confession of defendant as part of the evidence upon which to base the convictio

**8. Divorced Wife as a Witness.**

A wife who has been divorced from her husband may testify as to his confessions made to her subsequent to the divorce.

APPEAL from the District Court of Bastrop. Tried below before Hon. ED. R. SINKS.

Appeal from a conviction for murder in the first degree; penalty, a life term of imprisonment in the penitentiary.

The indictment charged appellant with the murder of Louis Drisdale, on the 21st day of May, 1897, by shooting him with a pistol.

The opinion states the case.

*Jones & Jones,* for appellant.

*Robt. A. John,* Assistant Attorney-General, for the State.

BROOKS, JUDGE.—Appellant was indicted for the murder of Louis Drisdale. The first trial resulted in a judgment of conviction of murder in the first degree, with a life penalty attached. A new trial was awarded appellant for some misconduct of the jury, and another trial resulted in the same verdict. From this last verdict he prosecutes this appeal.

Appellant's first assignment of error is that the verdict of the jury is contrary to the law and the evidence. It appears that the deceased, Louis Drisdale, was killed at the Colorado Schoolhouse, in Bastrop County, on or about the 21st day of May, 1897, at night; that while sitting in the house, listening to a debate, some one from the outside fired in through the window, shooting the deceased. Henry Washington, witness for the State, among other things, testified as follows: "I had a conversation with appellant at Flower Hill Church a short time before the killing, and appellant asked me if Louis Drisdale, deceased, was mad at him for walking with Drisdale's wife, and I told him I did not know. Defendant said: 'I am like Jesse James. I had just as soon have the game as the name.'" In reference to the time of the killing, he states that he swore at the coroner's inquest that the killing took place at 8:25 p. m.; that by that time he meant by the watch he had; that he did not say by that watch at the coroner's inquest, that it was 8:25; that he started the watch running at 8 o'clock, and had to shake it every fifteen or twenty minutes to keep it running; that it was about an hour and a half after he got to the church before the lamps were lighted, and the lamps were lighted about an hour and a half before the shooting; that Zack Barfield and one or two others went, immediately after the shooting, to Smithville for Constable Joe Sims, and they were gone about an hour and a half before they returned. Constable Joe Sims testified that it was 11 o'clock when Zack Barfield and the other parties came to his house and notified him of the shooting of the deceased. Zack Barfield testified that after the killing he got on his horse and went with Ed Burleson to Smithville for Mr. Sims, the officer; that they rode in a fast gait. This witness, Barfield, further stated that he was present at the coroner's inquest held on the body of deceased the morning of the killing, and swore that the shooting was about 8:25; that he swore it was about 8:25, because Henry Washington said it was about that time by the watch. Zeik Adams, State's witness, testified that it must have been 10 o'clock when the killing occurred. Charley Grant, another witness for the State, testified that it was about 10 o'clock when the shooting occurred. This witness further stated "that defendant saw him in his field, the next morning after the killing, and said, 'Your sister Fannie told me a man was killed at Colorado Schoolhouse last night,' and asked who it was. I told him it was Louis Drisdale. He then asked me if they knew who killed him, and I told him, 'No.' He then asked me if they saw any-

body, or were after anybody. I told him, 'No.' He stayed with me about fifteen minutes, but did not ask me how deceased was killed. He asked me no further questions, and did not say anything further about the killing." This witness stated that he was on the floor, speaking, when the shot was fired through the window from the outside. Charles Bell, for the State, testified: "I had a conversation with defendant about a month before the killing, and he told me that he like to have gotten in a row with Louis Drisdale about walking with Drisdale's wife; that if Drisdale kept fooling with him he would kill him." Deceased's wife testified that appellant walked with her on the second Sunday of February, 1897, from church, which was a short time before her husband was killed, and that she told her husband about it, and he told witness never to walk with appellant any more; that appellant was not the right kind of a man; that deceased said that appellant was not decent company for decent women. Adeline White, the divorced wife of appellant, testified: "Appellant talked to me, about Christmas, when he was out on bond. He came to my house about 10 o'clock and stayed until 5 o'clock the next morning. He told me, while there, that he killed Louis Drisdale; that there were five more he wanted to kill. He threw his pistol down on me, and told me he would kill me if I told it." This conversation occurred about a month after the divorce was granted, and defendant knew that the divorce had been granted at the time of this conversation. Constable Joe Sims, in addition to the fact that he stated that the parties came after him at about 11 o'clock, and notified him that deceased had been killed, also stated that it was about two miles from the church, where the killing occurred, to Donnell's, where appellant lived at that time; that witness went to the church early next morning and found deceased sitting on the bench, with his head leaning against the back of the bench, being in the position he was in when killed. A ball had entered the left side of the head, and passed through, and lodged under the skin on the opposite side; that witness cut it out, and had it then in his possession; that it was a 45-caliber six-shooter ball; that the ball was in two pieces when taken from the deceased's head; and that a part was never taken from the head. The butt end of the ball or hollow shows that it is a 45-caliber. Witness had had considerable experience in the use of firearms, and stated positively that the ball with which the deceased was shot was a 45-caliber six-shooter ball; that the ball taken from deceased's head weighed 16 grains less than a 45-caliber, but it shows that it lost that much going through the head. Witness was at the schoolhouse the morning after the killing. There was a track near the road, some distance from the schoolhouse. The track was made by a No. 8 shoe, though he did not measure it. "I had on a No. 7 or 7½ shoe on my foot. I put my foot in the track, and the track just about fit my shoe." Witness went to the schoolhouse early the next morning after the killing, and examined carefully for tracks of the person who did the shooting; but, owing to the grass and weeds and the condition of the ground near the window he could discover no tracks

near the window where the party was supposed to be who fired the shot. People had been passing all about the place, and there was no way of telling whether the track witness saw was made by the murderer or some one else. Willis Donnell testified that, just before appellant left his house on the night of the killing, witness exchanged pistols with appellant for the night, appellant taking with him witness' 45-caliber pistol, with five cartridges in its chambers, and left him his 44-caliber pistol, with four or five cartridges in its chambers. When appellant returned the next morning and gave witness his pistol, he told witness that he had shot one load out of witness' pistol, but he would replace it.. The next morning after the killing, as appellant and witness were at the lot fixing to go to the field to plow, witness noticed a great many people passing. Witness called appellant's attention to it, and appellant replied, "There is liable to be sad news go over the farm to-day." Witness did not ask him, and he did not explain, what he meant by that remark. Witness had not at that time heard of the death of the deceased. "Afterwards, at about 10 o'clock on the same day, appellant quit working for a short while and went into an adjoining field, where Charley Green was at work, and upon his return he said to me, 'Somebody killed Louis Drisdale last night.' I then asked appellant who did it, and he replied that he did, but that they could never prove it on him, and told me to say nothing about it." This statement was made to witness, and witness heard it distinctly, but witness asked appellant no more questions about it, and at that time they said no more about it. It was about three miles from the witness' house to the schoolhouse where the deceased was killed. Appellant had been in the employ of witness most of the time for four or five years, and was in his employ at the time of the killing. The State also introduced the decree of divorce between Adeline White and the appellant. Charley Donnell and his two brothers were witnesses for defendant, and testified that appellant left their home between 8 and 9 o'clock, and Charley Donnell further states that after supper appellant said he was in a hurry to get off, and left at once.

The foregoing is, in substance, all the testimony adduced upon the trial of this case. As will be seen from the foregoing (1) some one assassinated deceased; (2) a motive on the part of the appellant to kill deceased was proved; (3) threats to take his life were shown; (4) preparation by getting the pistol from the witness Donnell; (5) the size of the ball corresponded with the size of the ball in the pistol that appellant took from Donnell; (6) the fact that it was a six-shooter ball,— the kind of pistol appellant had; and (7) the confession of appellant to the witness Willis Donnell and also to appellant's divorced wife. We have repeatedly held that a confession alone will not authorize a conviction; but where the corpus delicti is established aliunde, and then the State introduces the confession of appellant that he (appellant) is the party who committed that act, then, if the jury believe the confession, coupled with the facts and circumstances establishing the corpus delicti, the State has

made out a case. Applying this rule to the facts in this case, we find that the corpus delicti has been proved,—that is to say, deceased came to his death by violence at the hands of someone; and we have the confession of appellant that he killed deceased, and the various circumstances above set forth corroborate the confession, and tend very strongly to indicate that defendant, and no other, committed the assassination. Mr. Wharton, in his work on Criminal Procedure, laws down the rule as to this matter very admirably. He says: "It has already been stated that the corpus delicti includes two things: First, the objective; and then the subjective elements of criminality. In other words: First, that the overt act took place; and, secondly, that it took place through criminal agency. Of homicide, therefore, it must be held essential to conviction—First, that the deceased should be shown to have been killed; secondly, that this killing should be proved to have been criminally caused. And, on the well-known principle that in capital cases this criminal agency of defendant can not be proved on his confession alone, without proof of the corpus delicti, it must not only be shown, to justify conviction in such case, that deceased was dead, but that his death was criminally produced. Unless the corpus delicti in both these respects is proven, the confession is not, by itself, enough to sustain the conviction. It is perfectly competent to establish the corpus delicti by circumstantial evidence." Whart. Hom., sec. 640. In reviewing the authorities of our own court upon this matter, there seems to be an apparent conflict between the cases of Attaway v. State, 35 Texas Criminal Reports, 403; Lovelady v. State, 14 Texas Criminal Appeals, 560; Harris v. State, 28 Texas Criminal Appeals, 309; and Willard v. State, 26 Texas Criminal Appeals, 126. But, upon a close examination of these authorities, we find that the case of Attaway v. State is not in conflict with the principle enunciated in the other three cases. The State in this case has established the corpus delicti very clearly; that is to say, it has shown a criminal act, to wit, the killing of the deceased; and, second, it has shown, by appellant's confession, the guilty agency of appellant in the commission of the said act. We therefore hold that appellant's assignment is not well taken, but, on the contrary, the verdict of the jury is amply supported by the law and the evidence. Andrews v. People, 117 Ill., 195, 7 N. E. Rep., 265; 6 Am. and Eng. Enc. of Law, new ed., p. 585; 7 Am. and Eng. Enc. of Law, new ed., p. 862; Mose v. State, 36 Ala., 211; South v. People, 98 Ill., 263; Williams v. State, 12 Lea, 211; Hill v. State, 11 Texas Crim. App., 138.

Appellant's second assignment is as follows: "The testimony of the State's witness Joe Sims as to the distance from the Donnell residence to the Colorado Schoolhouse was to the defendant a surprise, and found him unprepared to refute said testimony." We can not agree to this contention. The mere fact that the witness testified to something that appellant thought was contrary to what he would testify is not a matter of surprise, and can not be complained of for the first time on motion for new trial. Bryant v. State, 35 Texas Crim. Rep., 394; Zollicoffer v. State (Texas Crim. App.), 38 S. W. Rep., 775.

Appellant's third assignment of error complains of the action of the court in forcing him to trial for want of the testimony of·Thomas Hardeman, by whom he proposed to prove the distance from the Donnell home, where appellant lived, to the scene of the tragedy. In view of the statement of facts before us, we do not think this testimony was material, conceding its truth. The witnesses in various places state the distance to be two or three miles, and the discrepancy of a mile and half would not be material, or, at least, would not be of such materiality as to authorize a new trial on that ground, viewed in the light of the record before us.

Appellant's next assignment is that the court erred in his charge to the jury, in not charging upon the law of circumstantial evidence. In answer to this assignment, we would observe that no bill of exceptions, nor exception in motion for new trial, was reserved to the failure of the court to give this charge, and hence we can not review the same. Even if there had been, it is not necessary for the court to charge on circumstantial evidence, when the State relies on the confession of the defendant as part of the evidence on which to base the conviction. Dunn v. State, 34 Texas Crim. Rep., 257; Wampler v. State, 28 Texas Crim. App., 352; Ben v. State, 9 Texas Crim. App., 107; Jack v. State, 20 Texas Crim. App., 656.

Appellant's ninth assignment of error complains of the action of the court admitting the testimony of Adeline White, the defendant's former wife, who procured a divorce from the defendant prior to the time the confession of defendant was made to her. It is well settled that the decree of divorce annuls the bonds of matrimony, and the parties to the marriage, subsequent to a decree of divorce, occupy the same position in law as they did prior to the marriage. Johnson v. State, 27 Texas Crim. App., 135; Clanton v. State, 20 Texas Crim. App., 615; Inman v. State (Ark.), 47 S. W. Rep., 559.

As stated before, the record discloses that deceased was sitting, listening to a debate, and while so doing he was shot from the outside of the house, through the window, and killed. Appellant confessed to his former wife and another witness that he killed deceased. These two confessions are amply corroborated by the appellant's acts and declarations and statements, before and after the transaction, coupled with the other facts of corroboration stated above. In other words, the confession of appellant is amply corroborated, not only as to the corpus delicti, but as to the fact of confession. There are strong criminative facts in this record against appellant, outside of appellant's own confession. No error appearing in the record, the judgment is in·all things affirmed.

*Affirmed.*