OSCAR BLACKBURN v. THE STATE.

No. 2692.    Decided November 5, 1913.

**1.—Seduction—Sufficiency of the Evidence.**

Where, upon trial of seduction, the evidence sustained the conviction under a proper charge of the court, there was no error.

**2.—Same—Charge of Court—Chastity—Presumption.**

The law presumes the chastity of every woman, and where, upon trial of seduction, the evidence did not tend to show that the prosecutrix was not chaste at the time defendant seduced her, and the court's charge, considered as a whole, substantially required the jury to believe that prosecutrix was chaste before they could convict defendant and that if she was not, to acquit him, there was no error. Following Lagrone v. State, 12 Texas Crim. App., 426.

**3.—Same—Charge of Court—Definition of Seduction—Article 743.**

It is not necessary and not error not to define words in the Codes which are ordinary English words, and which are commonly and ordinarily understood by people generally, and where the case is not one where the word "seduction" should be defined, and the charge as a whole was correct, there was no error under article 743, Code Criminal Procedure.

**4.—Same—Motion for New Trial—General Objections.**

Where defendant, in his motion for new trial, did not point out any error in the court's charge, the same could not be considered on appeal.

Vol. 71 Crim.-40.

**5.—Same—Weight of Evidence—Charge of Court.**

Where a requested charge was on the weight of the evidence with reference to the unchastity of the prosecutrix, the same was correctly refused.

Appeal from the District Court of Denton.   Tried below before the Hon. C. F. Spencer.

Appeal from a conviction of seduction; penalty, five years imprisonment in the penitentiary.

The opinion states the case.

*Owsley & Owsley*, for appellant.—On question of the court's failure to submit the issue of chastity:   Fine v. State, 77 S. W. Rep., 806; Gorzell v. State, 63 S. W. Rep., 126; Spenrath v. State, 48 S. W. Rep., 192; Nolen v. State, 88 S. W. Rep., 242; Simmons v. State, 54 Texas Crim. Rep., 619, 114 S. W. Rep., 841; Davis v. State, 38 S. W. Rep., 174; Creighton v. State, 51 S. W. Rep., 910.

*C. E. Lane*, Assistant Attorney-General, and *Sullivan & Hill* and *H. R. Wilson*, County Attorney, and *F. M. Bottorff*, for the State.

PRENDERGAST, Presiding Judge.—Appellant was convicted of seduction and his punishment fixed at five years confinement in the penitentiary.

The testimony of Miss Nora Crites, the alleged seduced girl, and the appellant, who is alleged to have seduced her, both, without question, shows that they were raised and lived in the same community and knew one another practically all of their lives; that he was about a year and a half older than she; that about March 1, 1910, when she was about sixteen years of age he became her suitor and that a few months thereafter he made love to her, professing to her his love and she stating that she loved him, and thereupon they became engaged to be married; that he devoted his attention to her pretty constantly from that time until February, 1912, intending, as he himself testified, all this time to keep his engagement with her and marry her; that soon after they first became engaged in 1910, by mutual consent they fixed about Christmas, 1910, to get married, and she prepared her wedding garments, but from some cause he, with her consent, postponed the wedding till July, 1911, and thereafter from time to time he postponed it until February, 1912, when he made up his mind that he would not marry her. From the time he first became engaged to her, as he claimed, until a week or two before he had the first act of intercourse with her he had made no indecent proposal to her to that effect and neither of them had conducted themselves towards the other to indicate any such thing. She testified that about three months before the first act of intercourse he began after her to have sexual intercourse with him, just talking to her all the time about it and worrying her to death and that he was going to quit coming if she didn't yield to him; that he was worrying her all the time about it for this three months just before he succeeded

in inducing her to yield to him. That she loved him,—just worshiped him,—all this time and that she had continuously loved him all the time and even up to the time of the trial in February, 1913.

She further testified that the first act of intercourse he had with her was *about* April 25, 1911,—she couldn't fix the exact date—and that he, at that time, again promised to marry her and that she yielded to him solely because of his then and oft repeated promise and engagement to marry her. It seems that he kept a memorandum of the exact date on which the first act of intercourse occurred, testifying that it occurred on April 12, 1911. He denied that at that particular time he promised to marry her, but, he says, that he had been engaged to her for about one year at that time, all the time intending to marry her, and that he knows that she at the time of this first act of intercourse relied upon his promise to marry her.

She further testified that she had a baby by appellant, which was about thirteen months old at the time of this trial. She further testified positively that no other man, other than appellant, had ever at any time had sexual intercourse with her, and positively that he was the father of this child of hers. And that he had never had intercourse with her until after they had been engaged to be married nearly a year and, as stated above, she yielded to him solely on account of his promise to marry her. Appellant himself testified that a long time after he became engaged to marry the girl and that he loved her and intended to marry her, a certain man told him that he, that man, had had intercourse with the girl. He said at the time he was engaged to marry the girl and intended to do so, and did not resent what this man told him and while it had some effect on him it did not change his intent then to marry her. Although this case pended for about a year after he was indicted, he never produced this witness whom he claimed told him this, nor did he give any satisfactory account of why he did not produce this witness on the trial. He also testified that long after his engagement to this girl, and after he had this first act of intercourse with her, he was told by his uncle that one Lee Martin had told his uncle and that his uncle told him that said Martin claimed to have had sexual intercourse with this girl. Martin denied all this on the stand and swore positively that he had never at any time had sexual intercourse with this girl. The record shows further that the appellant never abandoned his intention to marry this girl until her father had him arrested in February, 1912, for the offense of fornication with this girl; that that was the "straw that broke the camel's back" and made him abandon his intention to marry this girl. When pressed in cross-examination, on the stand, he did not deny the paternity of this girl's child, nor would he go to the extent of saying that he believed that it was not his child. The utmost that he would say was that he did not *know*. To take his testimony alone, we think it is amply sufficient to sustain the verdict of his guilt. But when backed up by all the other

testimony in the record, it seems there could be no reasonable doubt by any one of his guilt.

The main contention of appellant is that the court did not specifically require the jury to believe that the girl was chaste before they could find him guilty. "The law presumes the chastity of every woman. Lagrone v. State, 12 Texas Crim. App., 426." Especially would this be true of a young girl such as this girl is shown to have been. Substantially all of the intimation in this record that in any way tends to show that this girl was not a chaste girl at the time appellant seduced her, was appellant's suspicion, and claimed information from third parties, whom he did not produce to substantiate what he claimed they told him. And the further fact that while this young girl was from thirteen to fifteen years of age she and one Lee Martin were devoted lovers, each loving the other and professing their love for one another, and that as such lovers she permitted him to hug and kiss her and perhaps on some occasion sat in his lap. Both she and Martin in their testimony deny improper or undue familiarity between them and positively deny any act of intercourse at any time. On this point the evidence further discloses that she herself broke off with Lee Martin, because he began drinking and until that they both contemplated and intended marriage.

We think the court sufficiently submitted this question to the jury both in affirmatively requiring the jury to believe beyond a reasonable doubt that appellant had carnal knowledge of this girl and at the time she consented thereto solely by reason and because of his promise to marry her. Then, in again telling the jury pointedly that if they did not believe from the evidence beyond a reasonable doubt that she submitted to this act of intercourse by reason and because of and in consideration of his promise to marry her, to find him not guilty. Again, he pointedly and clearly told the jury that if this girl, prior to the time appellant had this first act of intercourse with her, had ever at any time had intercourse with any other person or persons to acquit him, and that if he had ever had intercourse with her prior to his promise and engagement to marry her, to find him not guilty. So that substantially from all this did the court require the jury to believe that she was chaste before they could convict appellant and that if she was not to acquit him.

Another complaint of appellant is that the court did not specifically define the word seduction and that that resulted in material injury to him. The court, in his charge, first told the jury, strictly in accordance with the statute, if any person by a promise of marriage shall seduce an unmarried female, under the age of twenty-five years, and shall have carnal knowledge of such female, he is guilty of seduction. Then followed by quoting literally the next article of the statute, 1448, "the term seduction is used in the sense in which it is commonly understood." Our statute, article 10, Penal Code, expressly provides that words which have their meaning specially defined shall be understood

in that sense, though it be contrary to their usual meaning; and all words used in this Code, except where a word, term, or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and such matter relative to which they are employed. Arts. 58 and 59, Code of Criminal Procedure, prescribe: "All words and phrases used in this Code are to be taken and understood in their usual acceptation in common language, except where their meaning is particularly defined by law," and "the words and terms made use of in this Code, unless herein specially excepted, have the meaning which is given to them in the Penal Code and are to be construed and interpreted as therein declared." This court, in many decisions too numerous to cite, has held that it is unnecessary and not error not to define words in the Codes which are ordinary English words and which are commonly and ordinarily understood by people generally. See Humphreys v. State, 34 Texas Crim. Rep., 434; Douglass v. State, 33 S. W. Rep., 228; Austin v. State, 51 Texas Crim. Rep., 327; Thomas v. State, 55 Texas Crim. Rep., 293; Barber v. State, 64 Texas Crim. Rep., 89, 142 S. W. Rep., 577; Harris v. State, 64 Texas Crim. Rep., 594, 144 S. W. Rep., 232; Moore v. State, 65 Texas Crim. Rep., 453, 144 S. W. Rep., 598; Clay v. State, 65 Texas Crim. Rep., 590, 146 S. W. Rep., 166. It is unnecessary to cite the many other decisions. Possibly, notwithstanding these statutes, there might arise a case, as this court has in some cases held, that it would be necessary to define to the jury the word "seduce" or "seduction" under the offense of seduction. In our opinion this case and the evidence in it is not such a case, and under article 743, Code of Criminal Procedure, no error is presented which should require the reversal of this case, even if appellant's contention that the word is not specifically defined be correct. But under the terms of the statute and the charge of the court above stated, we think that even if it were necessary to define said word to the jury it has substantially been so defined sufficiently. It is the settled law of this State that where the charge, taken as a whole, substantially defines the offense and whatever words therein are necessary to be defined, is all that is required.

Appellant has several grounds in his motion for new trial, such as the court erred in not giving his charge number so and so, without showing in any way thereby why it should be given; and other like grounds which are entirely too general to point out any error or authorize or require this court to consider them, as has many times and uniformly been held by this court. It is unnecessary to cite the cases.

It would have been on the weight of the evidence for the court to have told the jury in his charge that the fact that the prosecuting witness had frequently had sexual intercourse with appellant after the first act, or her said conduct with said Martin while they were lovers, and she was so young, would show that she was unchaste and no such charge should have been given. These matters were all before the jury for their consideration on the whole case.

There is no other question presented showing any error or that requires any discussion.

The judgment will be affirmed.

*Affirmed.*