JOHN THOMAS v. THE STATE.

No. 4390. Decided February 10, 1909.

**1.—Assault to Murder—Charge of Court—Aggravated Assault—Serious Bodily Injury.**

Upon trial for assault with intent to murder where the evidence showed that the injured party was struck by defendant a blow in the face which knocked him down, rendered him unconscious for two or three hours, fractured his jaw bone and knocked out some of his teeth, there was no error in the court's charge on aggravated assault in submitting the issue of serious injury.

**2.—Same—Charge of Court—Definition of Serious Bodily Injury—Words and Phrases.**

The words "serious bodily injury" are words of ordinary signification, and there was no error in the court's charge in failing to instruct the jury what was meant by these words; and it was better practice not to do so.

**3.—Same—Charge of Court—Insanity—Irresistible Impulse.**

The doctrine of irresistible impulse is not recognized in this State; and where the court instructed the jury upon the issue of insanity, which was raised by the evidence in a prosecution for assault to murder, that they should acquit the defendant if at the time of committing the act he was laboring under such defects of reason from disease of mind as to not know the nature or quality of the act he was doing, or if he did know that he did not know he was doing wrong, the same was sufficient.

**4.—Same—Charge of Court—Form of Verdict.**

Upon trial for assault with intent to murder where the record did not show, as contended, the three forms of verdict submitted in the charge of the court, in the event defendant was found guilty, it would be presumed that a form for a verdict of not guilty was also submitted; however, even if appellant's contention is correct that the forms of verdict submitted were responsive in respect to appellant's guilt, yet when it also appeared by the court's charge that if they found appellant to be insane to acquit, although this instruction was not submitted in a formal verdict, the same was sufficient.

Appeal from the District Court of Johnson. Tried below before the Hon. O. L. Lockett.

Appeal from a conviction of aggravated assault; penalty, a fine of $25 and six months' confinement in the county jail.

The opinion states the case.

*Odell & Johnson*, for appellant.—On question of serious bodily injury: George v. State, 21 Texas Crim. App., 315; Halsell v. State, 29 Texas Crim. App., 22; Wilson v. State, 34 Texas Crim. Rep., 64. On question of form of verdict. Williams v. State, 24 Texas Crim. App., 637; Crook v. State, 27 Texas Crim. App., 198; Blackwell v. State, 30 Texas Crim. App., 416. On question of insanity. King v. State, 9 Texas Crim. App., 515, and cases cited in opinion.

*F. J. McCord*, Assistant Attorney-General, for the State.

RAMSEY, JUDGE.—Appellant was indicted in the District Court of Johnson County for the offense of assault with intent to murder one W. W. Dabbs. On trial he was convicted of aggravated assault and his punishment assessed at a. fine of $25 and six months confinement in the county jail.

The evidence in brief shows that on the night of the 19th or April, 1906, on East Henderson Street, in the city of Cleburne, the witness Dabbs, with one Joe Hays, was near where appellant, as they claimed, was cursing and abusing a small white boy, and that they intervened and protested against such abuse, and after some sharp words appellant left them, going in a southeasterly direction and after they had proceeded a few feet on their journey, going east, Dabbs, while walking along making no demonstration and doing nothing, was struck by some missile thrown by appellant and seriously hurt; that just before the missile was thrown, appellant stated, calling out to them: "I mean it for all of you." Dabbs testified that he was struck with something and knocked unconscious; that he was unconscious for a couple or three hours; that he was struck on the point of the chin and had two teeth knocked out and his jaw bone fractured; that he was not exactly in bed for any definite time, but was not able to do any work for a couple of months. The attending physician did not think the wounds so serious as the testimony of Dabbs would seem to indicate. He testified that appellant had a wound on his chin which was bleeding freely, which must have been some two or two and one half inches long, and was a rather jagged or rough wound, and he had two teeth broken off; that he was at the time he got to him a little bit dazed, but he recovered from that, and with the assistance of others went to his (witness') office. That he found no bones broken except these teeth which were broken; that he saw Dabbs the next day and after that

for perhaps two weeks until the wound was healed. When the wound was healed he was as well as he ever was so far as this was concerned, excepting the scar; and, of course, his teeth were still out; that Dabbs complained of a headache for a few days after this, but only a few days, when he discharged him as a well and cured man. The evidence further discloses that soon after striking Dabbs, appellant went to his home and told his mother about the incident and then left the country and went to Omaha, Nebraska, where he remained about a year until he was recaptured and brought to Texas.

1. A number of questions are raised by brief for appellant. Among other things, it is urged that there was no basis in the testimony for the court to submit to the jury the issue of aggravated assault for the reason that, under all the evidence, the injuries of Dabbs were not of such seriousness or gravity as to justify the submission of this issue, on the ground on which it was based in the charge of the court that the wound was such as to produce death or serious bodily injury. We can not accede to this contention. We think a blow in the face which knocks a grown man down, renders him unconscious for two or three hours, fractures his jaw bone and knocks out some of his teeth, is a serious injury, and under the testimony in this case asserting these facts to be true, the court was amply justified, and, indeed, required to submit this issue.

2. Again, it is urged that the court erred in his charge to the jury in not instructing them what was meant by the words and term "serious bodily injury." Some of the decisions of this court have, in discussing the facts of particular cases, undertaken to state what is "serious bodily injury," as they have undertaken to discuss, define and apply the meaning of other terms, but we have been cited to no case where the court has ever in a charge undertaken to define what is meant by this language. Our own opinion is that it should not be done in any case. The words are words of ordinary significance and would, we think, be as well understood by any jury of ordinary intelligence as any language by which they might be defined by the court.

3. Again, it is urged that the court erred in his charge to the jury upon the issue of insanity, The evidence of appellant clearly raised the issue that he was an epileptic; that it was more or less hereditary in his family, and that he had been a sufferer from this form of disease for many years. There was no evidence pertinently raising the issue that he was so affected at the very time of the commission of the alleged offense, or for something like ten days prior thereto, but there was sufficient evidence in the record of his affliction and its effect generally upon his mental condition, as to raise the issue of insanity and to require the court to submit the same. Being required to submit it, of course, it was incumbent upon the court to submit it correctly and to give all the law in charge to the jury touching this issue. This we think the court did. On this

subject he instructed the jury as follows: "Among other defenses made in this case is that of insanity. You are charged that only a person with sound memory and discretion can be punishable for crime, and that no act done in a state of insanity can be held punishable as an offense. Every man is presumed to be sane until the contrary appears to the jury trying him. He is presumed to entertain, until this appears, a sufficient degree of reason to be responsible for his acts, and to establish a defense on the ground of insanity, it must be clearly proved that at the time of committing the act the party accused was laboring under such defects of reason from disease of mind as not to know the nature or quality of the act he was doing, or if he did know, that he did not know he was doing wrong. That is, that he did not know the difference between the right and the wrong as to the particular act charged against him. The insanity must have existed at the very time of the commission of the offense, and the mind must have been so dethroned of reason as to deprive the person accused of the knowledge of right and wrong as to the particular act done. You are to determine from the evidence in this case the matter of insanity, it being a question of fact, but controlled so far as the law is concerned by the instruction herein given you. In case you find from the evidence that the defendant was insane at the time of the commission of the offense with which he is charged, if you find from the evidence beyond a reasonable doubt that he did commit said offense, and you acquit him on the ground of insanity, you will state in your verdict that you have acquitted the defendant on the ground of insanity. The burden of proof to establish the defendant's insanity devolves upon him.

The contention of appellant is, that this charge is wrong and that its infirmity consists in that the jury were not further instructed, substantially, that "if, although he might know that the act done by him was wrong, yet, if he was laboring under such defects of reason from disease of the mind that he would not have the will-power to resist and refrain from doing the act charged against him, he would then be entitled to an acquittal upon the ground of insanity." It will be observed that the court had instructed the jury that they should acquit if at the tme of committing the act the accused was laboring under such defects of reason from disease of mind as to not know the nature or quality of the act he was doing, or if he did know that he did not know he was doing wrong. Questions similar to the one here raised have not infrequently been before this court, and the following conclusions seem to be supported by all the authorities. First, that the law does not require, as the condition upon which criminal responsibility shall follow the commission of crime, the possession of one's faculties in full vigor; or a mind unimpaired by disease or infirmity. Second, that the mind may be weakened by disease or impaired,

and yet the accused be criminally responsible for his acts; that he can only discharge himself from responsibility by proving that his intellect was so disordered that he did not know the nature and quality of the act he was doing, and that it was an act he ought not to do. The rule announced by Mr. Greenleaf has received express approval by this court, and that rule is thus stated: "Whether or not the accused was laboring under such defects of reason from disease of the mind, as not to know the nature and quality of the act he was doing; or, if he did know it, that he did not know that he was doing wrong. In other words, 'the party's knowledge of right or wrong in respect to the very act with which he is charged,' seems to be the test." Greenleaf on Evidence, 373; Newberry v. State, 32 Texas Crim. Rep., 145. The cases of Leache v. State, 22 Texas Crim. App., 279, and King v. State, 9 Texas Crim. App., 515, while not recognizing the doctrine of irresistible impulse, do lend some slight countenance to it. This doctrine, however, on full consideration was expressly repudiated in the case of Cannon v. State, 41 Texas Crim. Rep., 467, where it is held that the doctrine of irresistible impulse to commit a crime is not a sound one. In the course of that opinion, it is stated: "If defendant has an irresistible impulse to commit a crime, and does not know the nature and quality of the act, he is insane. If he does know the nature and quality of the act, and does know right from wrong, and knows the act to be wrong, he is not insane." See also Hurst v. State, 40 Texas Crim. Rep., 378.

4. Complaint is made that the court erred in his charge, in this: In the thirteenth paragraph of same the court uses this language: "Three forms of verdict are given you below my signature, and you will fill out and have your foreman sign the one that is in accordance with your finding in this case." It will be noted further, that in the seventh paragraph of the court's charge he instructed the jury as follows: "In case you find from the evidence that the defendant was insane at the time of the commission of the offense with which he is charged, if you find from the evidence beyond a reasonable doubt that he did commit said offense, and you acquit him on the ground of insanity, you will state in your verdict that you have acquitted the defendant on the ground of insanity." It is claimed that the direction of the court in respect to the three forms of verdict referred to is particularly hurtful and erroneous in that, under the charge of the court the jury might have found either one of four verdicts and the court undertook and does give in his charge, four distinct forms of verdict, yet he charges them that they should return in this case a verdict corresponding to one of the three forms following his signature, thereby specially instructing the jury, in effect that they should disregard the fourth form which was the form of verdict of not guilty, because of insanity, and the form corresponding with the defense of insanity made by

the defendant in this case. It is urged that when the court undertakes to give the jury the form of verdict to be rendered, he must give them a proper form of each verdict, that may be rendered by them under the evidence and the law applicable to the case. A sufficient answer to this contention is, that the record does not show what the three forms of verdict were which appear in the charge or were given by the court to the jury for their guidance. In the absence of anything to the contrary, we should presume in aid of the action of the court below, that a form of verdict was submitted to them in the event they should find the appellant not guilty, on the ground of insanity. The case of Williams v. State, 24 Texas Crim. App., 637, lends some support to appellant's contention, if the matter were in such form that we could review it, though the language of the court is somewhat obscure. It is there stated: "Another exception made to the charge of the court is, that it prescribes the forms of verdict of guilty of murder in the first and second degrees, but omits to prescribe any form for a verdict of guilty of manslaughter, or for a verdict of not guilty. In this respect the charge is imperfect, but perhaps not materially so. It is not essential to the sufficiency of the charge that it should instruct the jury in the forms of the verdicts which may be rendered by them, though it is very proper, we think, to do so. But when such instructions are given, they should embrace every verdict which might be rendered in the case, so as to avoid conveying to the minds of the jury any impression as to the opinion of the court as to which of several verdicts should be rendered." If it should be conceded in this case and if the record had shown affirmatively that the forms of verdict prescribed by the court were responsive in respect to appellant's guilt of assault with intent to murder, aggravated assault, or simple assault, we do not think the case should be reversed on this ground. Having once instructed the jury in express terms that if they found appellant to be insane, they should acquit him on the ground and so state, it is inconceivable that any jury of ordinary intelligence could have understood, by the mere fact that three forms of verdict of guilty were attached to the court's charge, that this was any intimation of the court's view of the case, or that this fact lessened or minimized to any extent the plea of insanity, but must and would have understood that the forms prescribed were merely intended to aid them in putting their verdict in legal form in the event they believed appellant guilty of any of the grades of offense charged against him.

Finding no error in the proceedings of the court below, the judgment is in all things affirmed.

*Affirmed.*