the fact they had it in their hands and smelled its contents would present no error.

The fact that the prosecuting witness was named at the date of the alleged purchase Susie Gooden, that between the time she made the purchase and the time of the trial she had married a man named Lewis, and was called Susie Lewis, would present no variance. The indictment charged a sale to Susie Gooden, the name she bore at the time she says she made the purchase.

The judgment is affirmed.

---

## BLACKBURN v. STATE.

(Court of Criminal Appeals of Texas. Nov. 5, 1913.)

1. SEDUCTION (§ 45*)—PROSECUTION — SUFFICIENCY OF EVIDENCE.

Evidence, in a prosecution for seduction under promise of marriage, held sufficient to sustain a conviction.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 80–82; Dec. Dig. § 45.*]

2. CRIMINAL LAW (§ 309*)—EVIDENCE — PRESUMPTIONS—CHASTITY.

The law presumes the chastity of every woman, and especially would this be true of a young girl of 17.·

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 738; Dec. Dig. § 309.*]

3. SEDUCTION (§ 50*)—PROSECUTION—INSTRUCTIONS—CHASTITY.

In a prosecution for seduction under promise of marriage, where defendant claimed that he had heard of prosecutrix's intimacy with others but did not produce any witness who had told him of any such intimacy, instructions affirmatively requiring the jury to believe beyond a reasonable doubt that prosecutrix had submitted herself to defendant solely by reason of his promise to marry her, and that if she prior to that time had been intimate with any other person, or if defendant had ever been intimate with her prior to his promise of marriage, to find him not guilty, sufficiently submitted the question of the previous chastity of the prosecutrix.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 89–92; Dec. Dig. § 50.*]

4. CRIMINAL LAW (§ 800*)—INSTRUCTIONS — DEFINITION OF OFFENSE.

Under Pen. Code 1911, art. 10, declaring that words which have their meaning specially defined shall be understood in that sense, though contrary to their usual meaning, and that all words specially used in the Code, except those defined, shall be taken in the sense in which they are commonly understood, and Code Cr. Proc. 1911, arts. 58, 59, providing that words, unless specially excepted, have the meaning given to them in the Penal Code, it is unnecessary to define words in the Code which are ordinary English words generally understood.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1808–1810, 1812; Dec. Dig. § 800.*]

5. CRIMINAL LAW (§ 1186*)—APPEAL—HARMLESS ERROR—INSTRUCTIONS.

Under Code Cr. Proc. 1911, art. 743, providing that judgment shall not be reversed unless the error was calculated to injure the rights of defendant, it was not reversible error in a prosecution for seduction under promise of marriage, where there was evidence of the seduction and of the promise of marriage, to define the offense strictly in accordance with the statute without specifically defining it.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 3215–3219, 3221, 3230; Dec. Dig. § 1186.*]

6. SEDUCTION (§ 50*)—PROSECUTION—INSTRUCTIONS—DEFINITION OF OFFENSE.

In a prosecution for seduction under promise of marriage, an instruction, strictly in accordance with the statute, that, if any person by a promise of marriage shall seduce any unmarried female under the age of 25 years, he is guilty of seduction, and literally quoting Pen. Code 1911, art. 1448, declaring that the term "seduction" is used in the sense in which it is commonly understood, was sufficient even if it were necessary to define the offense to the jury; it being the rule that, where the charge taken as a whole substantially defines the offense and whatever words therein are necessary to be defined, that is all that is required.

[Ed. Note.—For other cases, see Seduction, Cent. Dig. §§ 89–92; Dec. Dig. § 50.*

For other definitions, see Words and Phrases, vol. 7, pp. 6389–6393.]

7. CRIMINAL LAW (§ 954*)—APPEAL — SUFFICIENCY OF GROUNDS. ·

Complaint, in a motion for a new trial, that the court erred in not giving defendant's charge, without showing in any way whereby it should be given, was too general to point out any error or require consideration.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 2341, 2363–2367; Dec. Dig. § 954.*]

8. CRIMINAL LAW (§§ 763, 764*) — INSTRUCTIONS—WEIGHT OF EVIDENCE.

In a prosecution for seduction under promise of marriage, a charge that the fact that the prosecuting witness had frequently had sexual intercourse with appellant after the first act, and her allowance of embraces, etc., from one to whom she had formerly been engaged, while she was between 13 and 15 years old, would show that she was unchaste, would have invaded the province of the jury as being a charge on the weight of the evidence.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1731–1748, 1752, 1768, 1770; Dec. Dig. §§ 763, 764.*]

Appeal from District Court, Denton County; C. F. Spencer, Judge.

Oscar Blackburn was convicted of seduction, and he appeals. Affirmed.

Owsley & Owsley, of Denton, for appellant. J. W. Sullivan, F. F. Hill, H. R. Wilson, Co. Atty., and F. M. Bottorff, Asst. Co. Atty., all of Denton, and C. E. Lane, Asst. Atty. Gen., for the State.

PRENDERGAST, P. J. Appellant was convicted of seduction and his punishment fixed at five years' confinement in the penitentiary.

[1] The testimony of Miss Nora Crites, the alleged seduced girl, and the appellant, who is alleged to have seduced her, both without question shows that they were raised and lived in the same community and knew one another practically all of their lives; that he was about a year and a half older than she; that about March 1, 1910, when she was about 16 years of age, be became her suitor, and that a few months thereafter he made love to her, professing to her his love and she stating that she loved him, and

thereupon they became engaged to be married; that he devoted his attention to her pretty constantly from that time until February, 1912, intending, as he himself testified, all this time to keep his engagement with her and marry her; that, soon after they first became engaged in 1910, by mutual consent they fixed about Christmas, 1910, to get married, and she prepared her wedding garments, but from some cause he, with her consent, postponed the wedding till July, 1911, and thereafter from time to time he postponed it until February, 1912, when he made up his mind that he would not marry her. From the time he first became engaged to her, as he claimed, until a week or two before he had the first act of intercourse with her, he had made no indecent proposal to her to that effect, and neither of them had conducted themselves towards the other to indicate any such thing. She testified that about three months before the first act of intercourse he began after her to have sexual intercourse with him, just talking to her all the time about it and worrying her to death and that he was going to quit coming if she did not yield to him; that he was worrying her all the time about it for this three months before he succeeded in inducing her to yield to him; that she loved him, just worshipped him, all this time; and that she had continuously loved him all the time and even up to the time of the trial in February, 1913. She further testified that the first act of intercourse he had with her was about April 25, 1911 (she could not fix the exact date), and that he, at that time, again promised to marry her, and that she yielded to him solely because of his then and oft-repeated promise and engagement to marry her. It seems that he kept a memorandum of the exact date on which the first act of intercourse occurred, testifying that it occurred on April 12, 1911. He denied that at that particular time he promised to marry her, but he says that he had been engaged to her for about one year at that time, all the time intending to marry her, and that he knows that she at the time of this first act of intercourse relied upon his promise to marry her. She further testified that she had a baby by appellant, which was about 13 months old at the time of this trial. She further testified positively that no other man other than appellant had ever at any time had sexual intercourse with her, and positively that he was the father of this child of hers, and that he had never had intercourse with her until after they had been engaged to be married nearly a year, and, as stated above, she yielded to him solely on account of his promise to marry her.

Appellant himself testified that, a long time after he became engaged to marry the girl and that he loved her and intended to marry her, a certain man told him that he (that man) had had intercourse with the girl.

He said at the time he was engaged to marry the girl and intended to do so and did not resent what this man told him, and, while it had some effect on him, it did not change his intent then to marry her. Although this case pended for about a year after he was indicted, he never produced this witness whom he claimed told him this, nor did he give any satisfactory account of why he did not produce this witness on the trial. He also testified that long after his engagement to this girl, and after he had this first act of intercourse with her, he was told by his uncle that one Lee Martin had told his uncle, and that his uncle told him, that said Martin claimed to have had sexual intercourse with this girl. Martin denied all this on the stand and swore positively that he had never at any time had sexual intercourse with this girl. The record shows further that the appellant never abandoned his intention to marry this girl until her father had him arrested in February, 1912, for the offense of fornication with this girl; that that was the "straw that broke the camel's back" and made him abandon his intention to marry this girl. When pressed in cross-examination on the stand, he did not deny the paternity of this girl's child, nor would he go to the extent of saying that he believed that it was not his child. The utmost that he would say was that he did not know. To take his testimony, alone, we think it is amply sufficient to sustain the verdict of his guilt. But, when backed up by all the other testimony in the record, it seems there could be no reasonable doubt by any one of his guilt.

[2] The main contention of appellant is that the court did not specifically require the jury to believe that the girl was chaste before they could find him guilty. "The law presumes the chastity of every woman. Lagrone v. State, 12 Tex. App. 426." Especially would this be true of a young girl of 17, such as this girl is shown to have been. Substantially all of the intimation in this record that in any way tends to show that this girl was not a chaste girl, at the time appellant seduced her, was appellant's suspicion and claimed information from third parties, whom he did not produce to substantiate what he claimed they told him, and the further fact that, while this young girl was from 13 to 15 years of age, she and one Lee Martin were devoted lovers, each loving the other and professing their love for one another, and that as such lovers she permitted him to hug and kiss her and perhaps on some occasions sat in his lap. Both she and Martin in their testimony deny any improper or undue familiarity between them and positively deny any act of intercourse at any time. On this point the evidence further discloses that she herself broke off with Lee Martin because he began drinking and until that they both contemplated and intended marriage.

[3] We think the court sufficiently submitted this question to the jury both in affirmatively requiring the jury to believe beyond a reasonable doubt that appellant had carnal knowledge of this girl and at the time she consented thereto solely by reason and because of his promise to marry her. Then, in again telling the jury pointedly that if they did not believe from the evidence beyond a reasonable doubt that she submitted to this act of intercourse by reason and because of and in consideration of his promise to marry her, to find him not guilty. Again he pointedly and clearly told the jury that if this girl, prior to the time appellant had this first act of intercourse with her, had ever at any time had intercourse with any other person or persons, to acquit him, and that if he had ever had intercourse with her prior to his promise and engagement to marry her, to find him not guilty. So that substantially from all this did the court require the jury to believe that she was chaste before they could convict appellant, and that if she was not, to acquit him.

[4-6] Another complaint of appellant is that the court did not specifically define the word "seduction" and that that resulted in material injury to him. The court, in his charge, first told the jury, strictly in accordance with the statute, if any person by a promise of marriage shall seduce an unmarried female under the age of 25 years, and shall have carnal knowledge of such female, he is guilty of seduction. Then followed by quoting literally the next article of the statute (article 1448): "The term 'seduction' is used in the sense in which it is commonly understood." Our statute (article 10, Pen. Code) expressly provides that words which have their meaning specially defined shall be understood in that sense, though it be contrary to their usual meaning; and all words used in this Code, except where a word, term, or phrase is specially defined, are to be taken and construed in the sense in which they are understood in common language, taking into consideration the context and such matter relative to which they are employed. Articles 58 and 59, Com. Cr. Proc., prescribe, "All words and phrases used in this Code are to be taken and understood in their usual acceptation in common language, except where their meaning is particularly defined by law;" and "the words and terms made use of in this Code, unless herein specially excepted, have the meaning which is given to them in the Penal Code, and are to be construed and interpreted as therein declared." This court, in many decisions too numerous to cite, has held that it is unnecessary and not error not to define words in the Codes which are ordinary English words and which are commonly and ordinarily understood by people generally. See Humphreys v. State, 34 Tex. Cr. R. 434, 30

S. W. 1066; Douglass v. State, 33 S. W. 228; Austin v. State, 51 Tex. Cr. R. 328, 101 S. W. 1162; Thomas v. State, 55 Tex. Cr. R. 295, 116 S. W. 600; Barber v. State, 142 S. W. 577; Harris v. State, 144 S. W. 232; Moore v. State, 144 S. W. 598; Clay v. State, 146 S. W. 166. It is unnecessary to cite the many other decisions. Possibly, notwithstanding these statutes, there might arise a case, as this court has in some cases held, that it would be necessary to define to the jury the word "seduce" or "seduction" under the offense of seduction. In our opinion this case and the evidence in it is not such a case, and under article 743, Code Cr. Proc., no error is presented which should require the reversal of this case, even if appellant's contention that the word is not specifically defined be correct. But, under the terms of the statute and the charge of the court above stated, we think that, even if it were necessary to define said word to the jury, it has substantially been so defined sufficiently. It is the settled law of this state that where the charge taken as a whole substantially defines the offense and whatever words therein are necessary to be defined is all that is required.

[7] Appellant has several grounds in his motion for new trial, such as the court erred in not giving his charge number so and so, without showing in any way thereby why it should be given, and other like grounds which are entirely too general to point out any error or authorize or require this court to consider them, as has many times and uniformly been held by this court. It is unnecessary to cite the cases.

[8] It would have been on the weight of the evidence for the court to have told the jury in his charge that the fact that the prosecuting witness had frequently had sexual intercourse with appellant after the first act, or her said conduct with said Martin while they were lovers, and she was so young, would show that she was unchaste, and no such charge should have been given. These matters were all before the jury for their consideration on the whole case. There is no other question presented showing any error or that requires any discussion.

The judgment will be affirmed.